**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK, AS TRUSTEE ON BEHALF OF THE HOLDERS OF THE ALTERNATIVE LOAN TRUST 2006-6CB, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-6CB,<br><br>Plaintiff,<br>vs.<br><br>HILLCREST AT SUMMIT HILLS HOMEOWNERS ASSOCIATION, *et al.*,<br><br>Defendants. | Case No.: 2:16-cv-02295-GMN-PAL<br><br>**ORDER** |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 47), filed by Plaintiff Bank of New York Mellon ("Plaintiff"). Defendant Hillcrest at Summit Hills Homeowners Association ("HOA") and Defendant 2117 Kendall Hill Trust ("Kendall Hill") filed Responses, (ECF Nos. 49, 52), and Plaintiff filed a Reply, (ECF No. 53).[1]

For the reasons discussed herein, Plaintiff's Motion for Summary Judgment is **DENIED**.[2]

## I. BACKGROUND

This case arises from the non-judicial foreclosure on real property located at 2117 Kendall Hill Avenue, Las Vegas, Nevada 89106 (the "Property"). (Compl. ¶ 2, 5, ECF No. 1).

---

[1] Also before the Court is Kendall Hill's Motion to Stay, (ECF No. 36), in which Kendall Hill requests a stay pending the Nevada Supreme Court's decision in *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, 134 Adv. Op. 58 (Nev. 2018). Because the Nevada Supreme Court has since issued its decision, Kendall Hill's Motion to Stay is **DENIED as moot**.

[2] Kendall Hill, Plaintiff, and HOA have also filed motions for summary judgment, (ECF Nos. 57, 58, 59), which the Court will address in a subsequent order.

On December 28, 2004, non-party Shirley D. McCalebb ("Borrower") purchased the Property by way of a loan in the amount of $176,000 secured by a deed of trust (the "DOT"). (*Id.* ¶¶ 8, 10–11). Plaintiff is the current beneficiary under the DOT following an assignment on October 5, 2011. (*Id.* ¶ 12).

Upon Borrower's failure to pay all amounts due, HOA, through its agent Nevada Association Services, Inc. ("NAS"), recorded a notice of delinquent assessment lien on July 2, 2010. (*Id.* ¶¶ 14, 16). On September 30, 2010, NAS, on behalf of HOA, recorded a notice of default and election to sell. (*Id.* ¶ 17). On February 7, 2011, NAS recorded a notice of foreclosure sale against the Property. (*Id.* ¶ 18).

On March 25, 2011, Bank of America, N.A. ("BANA"), the prior beneficiary under the DOT, allegedly tendered the superpriority lien amount to NAS. (*Id.* ¶ 19). NAS subsequently rejected BANA's tender. (*Id.* ¶¶ 20–21). On August 31, 2012, NAS, on behalf of HOA, recorded a second notice of foreclosure sale. (*Id.* ¶ 23). On November 2, 2012, HOA purchased the Property at the foreclosure sale and recorded its interest on November 27, 2012. (*Id.* ¶¶ 24–25). HOA later transferred its interest in the Property to Kendall Hill. (*Id.* ¶ 26).

Plaintiff filed its Complaint on September 30, 2016, asserting the following causes of action arising from the foreclosure and sales of the Property: (1) quiet title with the requested remedy of declaratory relief; (2) injunctive relief; (3) wrongful foreclosure; (4) negligence; (5) negligence per se; and (6) unjust enrichment. (*See id.* ¶¶ 70–129).

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is

sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50.

## III. DISCUSSION

Plaintiff moves for summary judgment on its first cause of action for declaratory relief and quiet title. (*See* Mot. Summ. J. ("MSJ") 2:5–12, ECF No. 47). Plaintiff asserts that it is entitled to judgment as a matter of law because the Ninth Circuit's holding in *Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016), *cert. denied*, No. 16-1208, 2017 WL 1300223 (U.S. June 26, 2017), compels the Court to hold that the HOA foreclosure sale did not extinguish Plaintiff's DOT. (MSJ 6:9–7:19).[3]

### i. Constitutionality of the Foreclosure

In *Bourne Valley*, the Ninth Circuit held that NRS § 116.3116's "'opt-in' notice scheme, which required a homeowners' association to alert a mortgage lender that it intended to

---

[3] In light of the Nevada Supreme Court's decision in *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, 422 P.3d 1248 (Nev. 2018), the Court ordered the parties to file supplemental briefs addressing the interplay between that decision and *Bourne Valley*, (ECF No. 68). Kendall Hill, HOA, and Plaintiff timely filed their respective briefs, (ECF Nos. 69–71).

foreclose only if the lender had affirmatively requested notice, facially violated the lender's constitutional due process rights under the Fourteenth Amendment to the Federal Constitution." *Bourne Valley*, 832 F.3d at 1156. Specifically, the Court of Appeals found that by enacting the statute, the Nevada legislature acted to adversely affect the property interests of mortgage lenders and was thus required to provide "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 1159. The statute's opt-in notice provisions therefore violated the Fourteenth Amendment's Due Process Clause because they impermissibly "shifted the burden of ensuring adequate notice from the foreclosing homeowners' association to a mortgage lender." *Id.*

In holding that NRS § 116.3116's opt-in notice scheme is facially unconstitutional, the Ninth Circuit rejected the appellant's argument that NRS § 107.090 should be read into NRS § 116.31168(1) to cure the constitutional deficiency. *Id.* Specifically, the appellant argued that the "incorporation of section 107.090 means that foreclosing homeowners' associations were required to provide notice to mortgage lenders even absent a request." *Id.* The Ninth Circuit, interpreting Nevada law, held that this interpretation "would impermissibly render the express notice provisions of Chapter 116 entirely superfluous." *Id.*

Subsequent to *Bourne Valley*, a court in this District certified the following question to the Nevada Supreme Court: "Whether NRS § 116.31168(1)'s incorporation of NRS § 107.090 required a homeowner's association to provide notices of default and/or sale to persons or entities holding a subordinate interest even when such persons or entities did not request notice, prior to the amendment that took effect on October 1, 2015." *Bank of New York Mellon v. Star Hill Homeowners Ass'n*, No. 2:16-cv-02561-RFB-PAL, 2017 WL 1439671, at *5 (D. Nev. Apr. 21, 2017). On August 2, 2018, the Nevada Supreme Court issued its decision on the certified question in *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, 422 P.3d 1248 (Nev. 2018).

The Nevada Supreme Court explicitly "decline[d] to follow the majority holding in *Bourne Valley*, 832 F.3d at 1159," and concluded that "NRS 116.31168 fully incorporated both the opt-in and mandatory notice provisions of NRS 107.090 . . . ." *Id.* at 1253. Therefore, "before the October 1, 2015, amendment to NRS 116.31168, the statute incorporated NRS 107.090's requirement to provide foreclosure notices to all holders of subordinate interests, even when such persons or entities did not request notice." *Id.*

"[A] State's highest court is the final judicial arbiter of the meaning of state statutes." *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975); *see also Knapp v. Cardwell*, 667 F.2d 1253, 1260 (9th Cir. 1982) ("State courts have the final authority to interpret and, where they see fit, to reinterpret that state's legislation."). Federal courts are bound by its respective circuit courts' interpretations of state law only "in the absence of any subsequent indication from the [state] courts that [the federal] interpretation was incorrect." *Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983); *see also Togill v. Clarke*, 877 F.3d 547, 556–60 (4th Cir. 2017) (holding that the Fourth Circuit was bound by the Supreme Court of Virginia's limiting construction of a statute that was previously found to be facially unconstitutional by a federal court). Such rulings may only be reexamined when the "reasoning or theory" of that authority is "clearly irreconcilable" with the reasoning or theory of intervening higher authority. *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (quoting *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc)). In determining whether intervening higher authority is "clearly irreconcilable," courts must "look at more than the surface conclusions of the competing authority." *Id.* "Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Id.* (quoting *Gammie*, 335 F.3d at 900).

Here, the Nevada Supreme Court's interpretation of NRS 116.31168's notice provisions is irreconcilable with the Ninth Circuit's prior interpretation. The Ninth Circuit's conclusion

The Nevada Supreme Court explicitly "decline[d] to follow the majority holding in *Bourne Valley*, 832 F.3d at 1159," and concluded that "NRS 116.31168 fully incorporated both the opt-in and mandatory notice provisions of NRS 107.090 . . . ." *Id.* at 1253. Therefore, "before the October 1, 2015, amendment to NRS 116.31168, the statute incorporated NRS 107.090's requirement to provide foreclosure notices to all holders of subordinate interests, even when such persons or entities did not request notice." *Id.*

"[A] State's highest court is the final judicial arbiter of the meaning of state statutes." *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975); *see also Knapp v. Cardwell*, 667 F.2d 1253, 1260 (9th Cir. 1982) ("State courts have the final authority to interpret and, where they see fit, to reinterpret that state's legislation."). Federal courts are bound by its respective circuit courts' interpretations of state law only "in the absence of any subsequent indication from the [state] courts that [the federal] interpretation was incorrect." *Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983); *see also Togill v. Clarke*, 877 F.3d 547, 556–60 (4th Cir. 2017) (holding that the Fourth Circuit was bound by the Supreme Court of Virginia's limiting construction of a statute that was previously found to be facially unconstitutional by a federal court). Such rulings may only be reexamined when the "reasoning or theory" of that authority is "clearly irreconcilable" with the reasoning or theory of intervening higher authority. *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (quoting *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc)). In determining whether intervening higher authority is "clearly irreconcilable," courts must "look at more than the surface conclusions of the competing authority." *Id.* "Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Id.* (quoting *Gammie*, 335 F.3d at 900).

Here, the Nevada Supreme Court's interpretation of NRS 116.31168's notice provisions is irreconcilable with the Ninth Circuit's prior interpretation. The Ninth Circuit's conclusion

that NRS § 116.3116 violated a lenders' due process rights was explicitly premised upon the Ninth Circuit's interpretation of state law. Specifically, the Ninth Circuit concluded the notice provisions of NRS 107.090 are not incorporated into NRS 116.31168. However, because the Nevada Supreme Court has since rejected the Ninth Circuit's interpretation by holding that the notice provisions of NRS 107.090 are incorporated into NRS 116.31168, *Bourne Valley* is no longer controlling authority with respect to § 116.3116's notice provisions.

Accordingly, to the extent Plaintiff's quiet title claim is premised upon the Ninth Circuit's holding in *Bourne Valley*, it necessarily fails. Because Plaintiff moves for summary judgment in the instant Motion solely on the basis that *Bourne Valley* controls, the Court denies Plaintiff's Motion.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 47), is **DENIED**.

**IT IS FURTHER ORDERED** that Kendall Hill's Motion to Stay, (ECF No. 36), is **DENIED as moot**.

**DATED** this __25__ day of September, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Judge