**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK, AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE ALTERNATIVE LOAN TRUST 2006-6CB, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-6CB,<br><br>Plaintiff,<br>vs.<br><br>HILLCREST AT SUMMIT HILLS HOMEOWNERS ASSOCIATION, *et al.*,<br><br>Defendants. | Case No.: 2:16-cv-02295-GMN-PAL<br><br>**ORDER** |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 58), filed by Plaintiff Bank of New York Mellon ("Plaintiff"). Defendants Hillcrest at Summit Hills Homeowners Association ("HOA") and 2117 Kendall Hill Trust ("Kendall Hill") (collectively "Defendants") filed Responses, (ECF Nos. 63, 64), and Plaintiff filed a Reply, (ECF No. 65).

Also pending before the Court are Defendants' Motions for Summary Judgment, (ECF Nos. 57, 59), to which Plaintiff filed a Response, (ECF No. 62), and Defendants filed Replies, (ECF Nos. 66, 67).

For the reasons discussed below, Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendants' Motions for Summary Judgment are **GRANTED in part** and **DENIED in part**.

**I.     BACKGROUND**

This case arises from the non-judicial foreclosure on real property located at 2117 Kendall Hill Avenue, Las Vegas, Nevada 89106 (the "Property"). In 2006, non-party Shirley

D. McCalebb ("Borrower") purchased the Property by way of a loan in the amount of $176,000 secured by a deed of trust (the "DOT"). (*See* Deed of Trust, Ex. B to Request for Judicial Notice, ECF No. 48-2). Plaintiff is the current beneficiary under the DOT following an assignment recorded on October 5, 2011. (*See* Assignment, ECF No. 48-3).

Upon Borrower's failure to pay all amounts due, HOA initiated foreclosure proceedings on October 5, 2011. (*See* Notice of Delinquent Assessment Lien, ECF No. 48-4). Nevada Association Services, Inc. ("NAS"), on behalf of HOA, subsequently recorded a notice of default and election to sell followed by a notice of foreclosure sale. (*See* Notice of Default, ECF No. 48-5); (Notice of Sale, ECF No. 48-6).

In February 2011, Bank of America, N.A. ("BANA"), Plaintiff's predecessor in interest under the DOT, requested an accounting ledger from NAS and current payoff demand, which NAS provided. (Accounting Request, Ex. 2 to Miles Bauer Aff., Ex. 3 to Pl.'s Mot. Summ. J. ("Pl.'s MSJ"), ECF No. 58-3); (Statement of Account, Ex. 3 to Miles Bauer Aff., ECF No. 58-3). Based upon the ledger, BANA calculated what it determined to be the superpriority portion of HOA's lien and mailed NAS a check for $630.00, which NAS later rejected. (Tender Letter, Ex. 4 to Miles Bauer Aff., Ex. 3 to Pl.'s MSJ, ECF No. 58-3); (*see also* Prolaw Screenshot, Ex. 1 to Miles Bauer Aff., ECF No. 58-3).

On August 31, 2012, NAS, on behalf of HOA, recorded a second notice of foreclosure sale. (Second Notice of Foreclosure Sale, ECF No. 48-7). HOA purchased the Property at the sale for $6,920.84 and recorded its interest on November 27, 2012. (Foreclosure Deed, ECF No. 48-8). On February 15, 2014, HOA sold the Property to Kendall Hill for $7,757.79. (*See* Grant, Bargain, and Sale Deed, ECF No. 48-9); (*see also* Kendall Hill's Answers to Pl.'s Interrog. No. 10, Ex. 4 to Pl.'s MSJ, ECF No. 58-4).

Plaintiff filed its Complaint on September 30, 2016, bringing the following causes of action arising from the foreclosure and subsequent sales of the Property: (1) quiet title with the

requested remedy of declaratory relief; (2) injunctive relief; (3) wrongful foreclosure; (4) negligence; (5) negligence per se; and (6) unjust enrichment. (*See* Compl. ¶¶ 70–129, ECF No. 1). On December 6, 2017, Kendall Hill filed an Answer asserting competing counterclaims against Plaintiff for quiet title and declaratory relief. (Am. Answer 6:14–7:11, ECF No. 41).

## II. <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an

essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50.

## III. DISCUSSION

Plaintiff moves for summary judgment on its quiet title claim[1] arguing that the foreclosure sale should be set aside because BANA, Plaintiff's predecessor in interest, satisfied HOA's superpriority lien prior to the sale. (Pl.'s MSJ 8:1–12:20, ECF No. 58). Kendall Hill seeks summary judgment on its competing claim for quiet title based upon the sale's purported extinguishment of Plaintiff's DOT, the sale's alleged compliance with NRS Chapter 116, and Kendall Hill's status as a bona fide purchaser. (Kendall Hill's Mot. Summ. J. ("Kendall Hill's MSJ") 7:22–25:8, ECF No. 57). HOA requests summary judgment in its favor on the grounds that Plaintiff's claims against it are time-barred and otherwise lack merit because the foreclosure proceedings were consistent with Nevada law. (HOA's Mot. Summ. J. ("HOA's MSJ") 5:2–12:27, ECF No. 59).

### A. Statute of Limitations

HOA contends that Plaintiff's claims for quiet title, negligence, wrongful foreclosure, and unjust enrichment are untimely because they are subject to two or three-year limitations periods. (*Id.* 5:11–7:18). According to HOA, because these claims center upon HOA's acts and omissions leading up to the foreclosure sale, the sale's recordation on November 27, 2012, triggered the relevant limitations periods. (*Id.* 7:14–18). Therefore, HOA continues, Plaintiff's failure to file its Complaint within three years of the sale is fatal to its claims. (*Id.*).

#### 1. Quiet Title

Plaintiff's quiet title claim is governed by either a four or five-year limitations period, which began to accrue no later than the foreclosure deed's recordation in November 2012.

---

[1] Plaintiff previously moved for summary judgment solely premised upon the Ninth Circuit's holding in *Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016). (*See* Pl.'s Mot. Summ. J., ECF No. 47). The Court denied Plaintiff's motion explaining that in light of the Nevada Supreme Court's decision in *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, 422 P.3d 1248 (Nev. 2018), *Bourne Valley* is no longer controlling authority with respect to its interpretation of NRS Chapter 116's notice provisions and, consequently, its finding of facial unconstitutionality. (*See* Order 4:21–7:10, ECF No. 74).

*Saticoy Bay LLC Series 2021 Gray Eagle Way v. JPMorgan Chase Bank*, 388 P.3d 226, 232 (Nev. 2017); *U.S. Bank, N.A. v. 9008 Med. Wheel Tr.*, No. 2:18-cv-00092-GMN-NJK, 2018 WL 4494090, at *3 (D. Nev. Sept. 18, 2018); *Weeping Hollow Ave. Tr. v. Spencer*, 831 F.3d 1110, 1114 (9th Cir. 2016). Therefore, because Plaintiff filed its September 30, 2016 Complaint less than four years after the sale, Plaintiff's cause of action for quiet title is timely.

### 2. Unjust Enrichment

Unjust enrichment claims are subject to a four-year limitations period under Nevada law. *In re Amerco Derivative Litig.*, 252 P.3d 681, 703 (Nev. 2011) ("The statute of limitation for an unjust enrichment claim is four years.") (citing NRS 11.190(2)(c)). This claim accrued, at the very earliest, at the time of the November 2012 foreclosure sale because Plaintiff's substantive allegations concern conduct that postdates the sale. (*See* Compl. ¶¶ 121–129). Accordingly, because Plaintiff filed this action less than four years after the sale, the unjust enrichment claim is properly before the Court.

### 3. Wrongful Foreclosure and Negligence/Negligence Per Se

In Nevada, claims premised upon breaches of statutory duties are subject to a three-year limitations period. *See* NRS 11.190(3)(a) ("An action upon a liability created by statute, other than a penalty or forfeiture" may only be commenced "[w]ithin 3 years."). Here, Plaintiff's allegations supporting its negligence, negligence per se, and wrongful foreclosure claims are expressly grounded in HOA's purported non-compliance with NRS Chapter 116, (Compl. ¶¶ 102–120), and therefore implicate a three-years limitations period. *See, e.g.*, *Prof-2013-S3 Legal Title Tr., by U.S. Bank Nat'l Ass'n v. SFR Invs. Pool 1, LLC*, No. 2:17-cv-02079-JAD-PAL, 2018 WL 2465177, at *6 (D. Nev. May 31, 2018); *Bank of Am., N.A. v. Desert Canyon Homeowners Ass'n*, No. 2:17-cv-00663-MMD-NJK, 2017 WL 4932912, at *2 (D. Nev. Oct. 31, 2017). Because Plaintiff brought this action more than three years after the foreclosure

sale, the wrongful foreclosure, negligence, and negligence per se claims are untimely. HOA's Motion is therefore granted as to these causes of action.

The Court now turns to the merits of Plaintiff and Kendall Hill's quiet title claims.

## B. Quiet Title

In Nevada, a quiet title action "may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim." *Chapman v. Deutsche Bank Nat'l Tr. Co.*, 302 P.3d 1103, 1106 (Nev. 2013). A plea to quiet title does not require any particular elements, but "each party must plead and prove his or her own claim to the property in question" and a "plaintiff's right to relief therefore depends on superiority of title." *Id.* (quoting *Yokeno v. Mafnas*, 973 F.2d 803, 808 (9th Cir. 1992)). The burden of proof rests with the party seeking to quiet title in its favor. *See Shadow Wood HOA v. N.Y. Cmty. Bancorp.*, 366 P.3d 1105, 1112 (Nev. 2016).

Plaintiff argues it is entitled to summary judgment because BANA paid off the HOA superpriority lien, thus invalidating the ensuing sale. (Pl.'s MSJ 8:2–10:23). Kendall Hill responds that Plaintiff's alleged payment is without legal effect because the tender impermissibly imposed conditions on HOA and NAS's acceptance. (Kendall Hill's Resp. to Pl.'s MSJ 4:16–6:23, ECF No. 64). HOA argues that in the event Plaintiff prevails on its quiet title claim, Plaintiff's remaining claims against HOA will necessarily be rendered moot. (HOA's Resp. to Pl.'s MSJ 6:13–7:11, ECF No. 63).

### 1. Tender of the Superpriority Portion of HOA's Lien

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing the deed of trust. *See* NRS 116.31166(1); *see also SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 414 (Nev. 2014). The superpriority portion of the lien consists of "the last nine months of

unpaid HOA dues and maintenance and nuisance-abatement charges," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Invs.*, 334 P.3d at 411; *Horizons at Seven Hills Homeowners Ass'n v. Ikon Holdings, LLC*, 373 P.3d 66, 70–74 (Nev. 2016). "[A] first deed of trust holder's unconditional tender of the superpriority amount due results in the buyer at foreclosure taking the property subject to the deed of trust." *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 116 (Nev. 2018) (en banc). In addition to full tender of the superpriority amount, "valid tender must be unconditional, or with conditions on which the tendering party has a right to insist." *Id.*

Plaintiff has come forward with evidence establishing that HOA's superpriority lien was limited to $630.00, or nine months of $70.00 common assessments. (Statement of Account, Ex. 1 to Pl.'s MSJ, ECF No. 58-1). Plaintiff has demonstrated that on March 25, 2011, BANA mailed a letter, enclosed with a $630 check, to NAS, which NAS subsequently rejected. (*See* Tender Letter, Ex. 4 to Miles Bauer Aff., Ex. 3 to Pl.'s MSJ, ECF No. 58-3); (Miles Bauer Aff. ¶ 11, ECF No. 58-3); (ProLaw Screenshot, Ex. 1 to Miles Bauer Aff., ECF No. 58-3).

Neither HOA nor Kendall Hill have put forth competing evidence to create a factual dispute as to BANA's calculation of the superpriority amount, the absence of nuisance and abatement charges, or BANA's offer of payment. The remaining issue, therefore, is whether BANA's tender was either unconditional or with conditions on which BANA had a right to insist. *Bank of Am., N.A.*, 427 P.3d at 121.

BANA's tender letter, in relevant part, provides:

> Our client has authorized us to make payment to you in the amount of $630.00 to satisfy its obligations to the HOA as a holder of the first deed of trust against the property. Thus, enclosed you will find a cashier's check made out to [NAS] in the sum of $630.00, which represents the maximum 9 months worth of delinquent assessments recoverable by an HOA. This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that

BAC's financial obligations towards the HOA in regards to the real property located at 2117 Kendall Hill have now been "paid in full."

(Tender Letter, Ex. 3 to Miles Bauer Aff., ECF No. 58-3).

Kendall Hill makes the following arguments to establish the invalidity or conditional nature of Plaintiff's tender: (1) the letter accompanying payment impermissibly conditioned acceptance on agreement with the letter's facts; (2) the unsettled status of Nevada foreclosure law justified NAS's rejection of BANA's tender; (3) the check was not a cashier's check; and (4) the amount tendered was in excess of HOA's superpriority lien. (Kendall Hill's Resp. to Pl.'s MSJ 4:16–6:23, ECF No. 64).

At the outset, the Court notes that one of the purportedly improper paragraphs in BANA's letter is identical to language the Nevada Supreme Court deemed unconditional and otherwise valid.[2] Therefore, to the extent Kendall Hill and HOA assign impropriety to language in that paragraph, the argument necessarily fails. Specifically, with respect to the provision that an endorsement would be construed as acceptance of the letter's facts, the Court incorporates the reasoning of the Nevada Supreme Court and finds this language constitutes a condition on which BANA had the right to insist. *Bank of Am., NA.*, 427 P.3d at 117.

Kendall Hill argues that acceptance of the letter's facts is problematic because the letter cites to NRS Chapter 116 but omits any mention of nuisance or abatement charges. (Kendall Hill's Resp. to Pl.'s MSJ 5:7–6:2). Kendall Hill continues that HOA was justified in rejecting the tender because Nevada foreclosure law at the relevant time period was unclear about

---

[2] The tender letter before the Nevada Supreme Court contained the following paragraph:

> This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that [Bank of America]'s financial obligations towards the HOA in regards to the [property] have now been "paid in full."

*Bank of Am., NA*, 427 P.3d at 118.

whether an HOA may include collection costs and attorneys' fees as part of its lien. (*Id.* 6:16–23).

The Court finds these contentions unpersuasive. An HOA's subjective belief and lack of bad faith are "legally irrelevant," because a valid tender satisfies "the default as to the superpriority portion of the HOA's lien by operation of law." *Pawlik v. Bank of New York Mellon*, No. 71681, 2018 WL 6617724, at *1 (Nev. Dec. 11, 2018) (unpublished); *Sage Realty LLC Series 2 v. Bank of New York Mellon*, No. 73735, 2018 WL 6617730, at *1 (Nev. Dec. 11, 2018) (unpublished). Additionally, the Nevada Supreme Court has expressly rejected the argument that the "legally unsettled" status of foreclosure law at the time disturbs the unconditional nature of an otherwise valid tender. *See Bank of Am., N.A.*, 427 P.3d at 118 ("[A] plain reading of NRS 116.3116 indicates that at the time of Bank of America's [2012] tender, tender of the superpriority amount by the first deed of trust holder was sufficient to satisfy that portion of the lien. Thus, the issue was not undecided."); *see also BAC Home Loans Servicing, LP v. Aspinwall Court Tr.*, No. 69885, 422 P.3d 709, 2018 WL 3544962, at *1 (Nev. July 20, 2018) (unpublished). In light of this authority, the Court finds that the purported nebulous nature of Nevada law during the relevant time neither impacts BANA's valid tender nor justifies NAS's rejection.

Kendall Hill also appears to assert, without explanation, that the tender was invalid because the accompanying check was drawn on BANA's law firm's trust account. (Kendall Hill's Resp. to Pl.'s MSJ 4:20–22). Kendall Hill does not cite any authority suggesting a tender under NRS Chapter 116 is invalid unless it is in the form of a cashier's check. On the contrary, NRS 116 appears to be silent on this point. *See Chinatown St. Tr. v. Bank of Am., N.A.*, No. 74545-COA, 2018 WL 6609590, at *1 (Nev. Ct. App. Dec. 7, 2018) ("NRS Chapter 116 does not require a cashier's check . . . ."). Absent any authority suggesting otherwise, and without

any cogent argument from Plaintiff, the Court is unconvinced that Nevada law requires lenders to furnish a cashier's check as a prerequisite to a valid tender.

Kendall Hill also argues the tender was invalid because BANA's check was for a sum greater than HOA's superpriority lien. (Kendall Hill's Resp. 4:19–5:3). Recent authority from the Nevada Supreme Court, however, confirms that otherwise valid tenders are not rendered invalid because a lender's payment exceeds an HOA's superpriority lien. *See, e.g.*, *Carrington Mortg. Holdings, LLC v. R Ventures VIII*, LLC, 429 P.3d 1256 (Nev. 2018) (unpublished) ("[T]he district court erroneously granted summary judgment for respondent, as appellant Carrington's predecessor tendered $655.14 to the HOA's agent, which undisputedly exceeded 9 months of assessments."); *Saticoy Bay LLC Series 3123 Inlet Bay v. Nationstar Mortg., LLC*, 429 P.3d 1257 (Nev. 2018) (same); *see also U.S. Bank, Nat'l Ass'n v. NV Eagles, LLC*, No. 2:15-cv-00786-RCJ-PAL, 2017 WL 2259768, at *3 (D. Nev. May 23, 2017) (granting summary judgment to lender where "Miles Bauer tendered well in excess of the HOA's superpriority lien.").

Based upon the foregoing, the Court finds the undisputed evidence indicates that BANA unconditionally tendered an amount sufficient to discharge HOA's superpriority lien. Therefore, the foreclosure sale did not disturb Plaintiff's DOT, which continues to encumber the Property. While the foreclosure sale remains intact, Kendall Hill's interest in the Property is subject to Plaintiff's DOT. Accordingly, the Court grants Plaintiff's Motion for Summary Judgment on its quiet title and declaratory relief claims, denies HOA's Motion on these claims, and denies Kendall Hill's Motion as to its competing quiet title claim.

### 2. Kendall Hill's Status as a Bona Fide Purchaser

Given the Court's finding that BANA validly tendered payment sufficient to satisfy the HOA superpriority lien, Kendall Hill cannot prevail even if the Court were to find that it was a bona fide purchaser for value. "A foreclosure sale on a mortgage lien after valid tender

satisfies that lien is void, as the lien is no longer in default." *See Bank of Am., N.A.*, 427 P.3d at 121 ("Because a trustee has no power to convey an interest in land securing a note or other obligation that is not in default, a purchaser at a foreclosure sale of that lien does not acquire title to that property interest."). Accordingly, in light of Plaintiff's unconditional tender, Kendall Hill's status as a bona fide purchaser is immaterial.[3]

### C. Unjust Enrichment

Plaintiff's unjust enrichment claim is based upon Plaintiff's alleged payments of taxes, insurance, and HOA assessments on the Property following the HOA foreclosure sale. (*See* Compl. ¶¶ 124–27). Kendall Hill asserts that this claim is barred by the voluntary payment doctrine because Plaintiff was on notice of the foreclosure sale and made payments without protest. (Kendall Hill's MSJ 25:27–26:21). HOA contends that Plaintiff cannot prevail on the unjust enrichment claim because Plaintiff has not adduced evidence of payments it purports to have made towards the Property. (HOA's MSJ 14:26–27). HOA further argues that even if these payments were made, they were for the benefit of the Property and its owner rather than HOA. (*Id.* 14:27–15:4).

Under Nevada law, unjust enrichment is an equitable doctrine that allows recovery of damages "whenever a person has and retains a benefit which in equity and good conscience belongs to another." *Unionamerica Mortg. & Equity Tr. v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981). To prevail on an unjust enrichment claim, a plaintiff must prove the following three elements: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) an acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without

---

[3] With respect to Kendall Hill's argument that BANA was required to record its tender or otherwise keep it good to safeguard against bona fide purchasers, (*see* Kendall Hill's Resp. 9:25–10:25); (Kendall Hill's MSJ 24:6–25), the Nevada Supreme Court has addressed and rejected this contention as well. *See Bank of Am., N.A.*, 427 P.3d at 119–21.

payment of the value thereof. *Takiguchi v. MRI Intern., Inc.*, 47 F. Supp. 3d 1100, 1119 (D. Nev. 2014).

Kendall Hill argues that the voluntary payment doctrine applies and bars Plaintiff's unjust enrichment claim. (Kendall Hill's MSJ 25:27–26:21). "The voluntary payment doctrine is an affirmative defense that provides that one who makes a payment voluntarily cannot recover it on the ground that he was under no legal obligation to make the payment." *JPMorgan Chase Bank, N.A. v. SFR Invs. Pool 1, LLC*, 200 F. Supp. 3d 1141, 1177 (D. Nev. 2016) (quoting *Nevada Ass'n Servs., Inc. v. Eighth Jud. Dist. Court*, 338 P.3d 1250, 1253 (Nev. 2014) (internal quotation marks omitted)). The defendant bears the burden of proving that the doctrine is applicable in a particular case. *Nevada Ass'n Servs.*, 338 P.3d at 1254. "Once a defendant shows that a voluntary payment was made, the burden shifts to the plaintiff to demonstrate that an exception to the voluntary payment doctrine applies." *Id.*

Kendall Hill has met its burden of showing that to the extent Plaintiff can prove it made payments towards the Property, they were voluntary. It is undisputed that Plaintiff's payments, if any, took place after the HOA foreclosure sale. (Pl.'s Resp. to Defs.' MSJs 28:5–20, ECF No. 62). Plaintiff neither argues that it made these payments under protest or without knowledge of the underlying facts. (*Id.*). Indeed, Plaintiff's predecessor in interest was on notice of the foreclosure proceedings and Plaintiff received the statutorily required notice of sale. (*See* Certified Mailing Receipts, Ex. G to HOA's MSJ, ECF No. 59-6); (Accounting Request, Ex. 2 to Miles Bauer Aff., Ex. 3 to Pl.'s MSJ, ECF No. 58-3). This is sufficient to shift the burden to Plaintiff to come forward with evidence establishing that an exception to the voluntary payment doctrine applies. *See Nevada Ass'n Servs.*, 338 P.3d at 1254 (holding that payor's admission that it made the payment, combined with the fact that the payor did not argue that it paid under protest or lacked knowledge of the facts, was sufficient for HOA's agent to meet its initial

burden under the voluntary payment doctrine); *see also JPMorgan Chase Bank, N.A.*, 200 F. Supp. 3d at 1177.

In its response, Plaintiff does not address Kendall Hill's affirmative defense invoking the voluntary payment doctrine. (*See* Pl.'s Resp. to Defs.' MSJs 27:4–28:20, ECF No. 62). Therefore, Plaintiff has failed to meet its burden of establishing that an exception to the voluntary payment doctrine salvages its claim. The Court, therefore, grants summary judgment to Kendall Hill on Plaintiff's unjust enrichment claim.

With respect to HOA, Plaintiff's proffered evidence falls short of creating a factual dispute as to whether Plaintiff paid taxes, insurance, or assessments on the Property. Plaintiff cites to an interrogatory response in which Plaintiff alludes to a "Financial Breakdown Summary," which purportedly substantiates such payments. (*Id.* 28:5–11). Plaintiff does not, however, attach the Financial Breakdown Summary as an exhibit. Plaintiff also points to Kendall Hill's 30(b)(6) designee who testified that Kendall Hill, upon acquiring the Property from HOA, was relieved of paying property taxes because an unknown person or entity had been making those payments. (*Id.* 28:11–15); (Kendall Hill's 30(b)(6) Dep. 24:13–18, Ex. 7 to Pl.'s Resp. to Defs.' MSJs, ECF No. 62-7). Kendall Hill's acknowledgment that *someone* paid property taxes does not establish that Plaintiff was the party that made those payments. Moreover, because Kendall Hill only testified about property tax payments after purchasing the Property, Plaintiff has still failed to present evidence of payments during the timeframe that HOA owned and possessed the Property. (*See* Kendall Hill's 30(b)(6) Dep. 24:13–15). Without such evidence, Plaintiff cannot show that it conferred a benefit upon HOA. *See JPMorgan Chase Bank*, *N.A.*, 200 F. Supp. at 1177 ("[Plaintiff] has produced no evidence of such payments; thus, it cannot establish the first element of its unjust enrichment claim[.]"); *see also Christiana Tr. v. SFR Invs. Pool 1, LLC*, No. 2:16-cv-00684-GMN-CWH, 2018 WL 6603643, at *8 (D. Nev. Dec. 17, 2018).

In sum, Kendall Hill is entitled to summary judgment on Plaintiff's unjust enrichment claim because Plaintiff has failed to demonstrate that an exception to the voluntary payment doctrine is applicable. Summary judgment is also warranted in HOA's favor because Plaintiff has not pointed the Court to any evidence showing that it bestowed a benefit upon HOA in the form of property taxes, insurance, or assessments.

### D. Injunctive Relief

With respect to Plaintiff's request for injunctive relief pending the Court's determination concerning the parties' respective rights and interests, the Court's grant of summary judgment for Plaintiff on is quiet title action moots this claim, and it is therefore dismissed.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 58), is **GRANTED** pursuant to the foregoing.

**IT IS FURTHER ORDERED** that HOA's Motion for Summary Judgment, (ECF No. 59), is **GRANTED in part** and **DENIED in part**. HOA's Motion is **GRANTED** on Plaintiff's claims for wrongful foreclosure, negligence, negligence per se, and unjust enrichment. HOA's Motion as to Plaintiff's quiet title claim is **DENIED**.

**IT IS FURTHER ORDERED** that Kendall Hill's Motion for Summary Judgment, (ECF No. 57), is **GRANTED in part** and **DENIED in part**. Kendall Hill's Motion as to Plaintiff's claim for unjust enrichment is **GRANTED**. Kendall Hill's Motion with respect to its quiet title claim and Plaintiff's quiet title claim is **DENIED**.

The Clerk of Court is instructed to close the case.

**DATED** this __31__ day of January, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Judge